UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CASEY CAGLE,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>C&S WHOLESALE GROCERS, INC., a Vermont corporation; TRACY LOGISTICS, LLC, an unknown business entity; and DOES 1 through 100, inclusive,<br><br>　　　　　Defendants. | No. 2:13-cv-02134-MCE-KJN<br><br>**MEMORANDUM AND ORDER** |

Through this action, Plaintiff Casey Cagle ("Plaintiff") seeks relief from Defendants C&S Wholesale Grocers, Inc. ("C&S") and Tracy Logistics, LLC ("Tracy Logistics") (collectively "Defendants") for wage and hour violations of the California Labor Code and California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 et seq. Plaintiff originally filed his Complaint in the Superior Court of California, County of Sacramento. On October 15, 2013, Defendants removed Plaintiff's case to federal court pursuant to this Court's diversity jurisdiction and the Court's jurisdiction under 28 U.S.C. § 1334.

///

1

Presently before the Court is Cagle's Motion to Remand ("Motion").  Mot., Nov. 14, 2013, ECF No. 14.  Defendants timely opposed the Motion.  Opp'n, Dec. 5, 2013, ECF No. 19. For the reasons set forth below, the Motion is DENIED.[1]

## BACKGROUND

Defendants employed Plaintiff as a warehouse supervisor.  Plaintiff worked in that position at Defendants' Stockton Facility from September 2010 to May 2011.  Plaintiff alleges that he was hired by Defendants, misclassified as an "exempt" employee, and paid on a salary basis without any compensation for overtime hours worked, missed meal periods, or rest breaks.

Plaintiff further claims that he worked over eight hours per day and/or more than forty hours per week during the course of his employment with Defendants.  According to Plaintiff, although Defendants knew or should have known that he was entitled to receive certain wages as overtime compensation, he did not receive such wages.  Plaintiff also asserts he did not receive all rest and meal periods to which he was entitled; nor did he receive one additional hour of pay when a meal period was missed.  Additionally, while Defendants knew or should have known that Plaintiff was entitled to receive at least minimum wages as compensation, he did not receive at least minimum wages for all hours worked.

Plaintiff goes on to allege that he was entitled to timely payment of all wages during his employment and to timely payment of wages earned upon termination, but did not receive timely payment of these wages either during his employment or upon termination.  Plaintiff likewise did not receive complete and accurate wage statements from Defendants, although Defendants knew or should have known that Plaintiff was entitled to these statements.

---

[1] Because oral argument will not be of material assistance, the Court ordered these matters submitted on the briefs.  E.D. Cal. Local R. 230(g).

Plaintiff also asserts that Defendants failed to keep complete and accurate payroll records.  Finally, Defendants falsely represented to Plaintiff that the wage denials were proper.  Instead, according to Plaintiff, these wage denials were improper and served the purpose of increasing Defendants' profits.

These claims were brought by a different plaintiff in a class action in state court, Tompkins v. C&S Wholesale Grocers, Inc., on February 3, 2011.[2]  On March 14, 2011, the defendants in the Tompkins action removed the case to federal court, asserting diversity jurisdiction pursuant to 28 U.S.C. § 1332(a).  The Tompkins plaintiff then moved to remand the case, on the grounds that the operative complaint alleged an amount in controversy below the $75,000 threshold.  The Court granted the plaintiff's motion to remand, finding that there was insufficient evidence to show that the amount in controversy for the plaintiff's individual claims exceeded $75,000.  The defendants again removed the case to federal court on October 26, 2011, based on discovery conducted prior to that date.  The Tompkins plaintiff again moved to remand, and the Court again granted the plaintiff's motion on the grounds that the defendants had not met their burden of proving that the amount in controversy on the plaintiff's individual claims exceeded $75,000.

On June 15, 2012, after the case was remanded the second time, the Tompkins defendants deposed the named plaintiff in that case, David Tompkins.  On September 21, 2012, the defendants offered Mr. Tompkins a Joint Offer to Compromise under California Civil Procedure Code § 998(b)(2), in the amount of $75,001. Mr. Tompkins accepted the Joint Offer on October 3, 2012.

The subject wage and hour claims were subsequently brought in a new class action, Bicek v. C&S Wholesale Grocers, Inc., No. 13-cv-00411, on behalf of the same putative class.  Bicek, which is also before this Court, is a class action which this Court has jurisdiction over pursuant to the Class Action Fairness Act.

---

[2] All facts relating to the Tompkins action are taken from Defendants' Opposition to Plaintiff's Motion to Remand.  ECF No. 14.

## STANDARD

There are two bases for federal subject matter jurisdiction: (1) federal question jurisdiction under 28 U.S.C. § 1331, and (2) diversity jurisdiction under 28 U.S.C. § 1332. A district court has federal question jurisdiction in "all civil actions arising under the Constitution, laws, or treaties of the United States." Id. § 1331.  A district court has diversity jurisdiction "where the matter in controversy exceeds the sum or value of $75,000, . . . and is between citizens of different states, or citizens of a State and citizens or subjects of a foreign state . . . ." Id. § 1332(a)(1)-(2).  Diversity jurisdiction requires complete diversity of citizenship, with each plaintiff being a citizen of a different state from each defendant.  28 U.S.C. § 1332(a)(1); Caterpillar, Inc. v. Lewis, 519 U.S. 61, 68 (1996) (stating that complete diversity of citizenship is required).

When a party brings a case in state court in "which the district courts of the United States have original jurisdiction," the defendant may remove it to the federal court "embracing the place where such action is pending." 28 U.S.C. § 1441(a). "The party invoking the removal statute bears the burden of establishing federal jurisdiction." Ethridge v. Harbor House Rest., 861 F.2d 1389, 1393 (9th Cir. 1988) (citing Williams v. Caterpillar Tractor Co., 786 F.2d 928, 940 (9th Cir. 1986)). A motion to remand is the proper procedure for challenging removal. "The party invoking the removal statute bears the burden of establishing federal jurisdiction." Ethridge, 861 F.2d at 1393 (internal citations omitted). Courts "strictly construe the removal statute against removal jurisdiction." Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992) (internal citations omitted). "[I]f there is any doubt as to the right of removal in the first instance," the court must grant the motion for remand. Id. Additionally, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded" to state court. 28 U.S.C. § 1447(c).

///

///

**ANALYSIS**

Defendants removed the instant case pursuant to the Court's diversity jurisdiction.[3] As set forth above, a district court has diversity jurisdiction "where the matter in controversy exceeds the sum or value of $75,000, . . . and is between citizens of different states, or citizens of a State and citizens or subjects of a foreign state . . . ." Id. § 1332(a)(1)-(2).

A.  **Citizenship**

Diversity jurisdiction requires complete diversity of citizenship, with each plaintiff being a citizen of a different state from each defendant. 28 U.S.C. § 1332(a)(1); Caterpillar, Inc. v. Lewis, 519 U.S. 61, 68 (1996) (stating that complete diversity of citizenship is required).

Here, it is clear that Cagle is a citizen of California. The complaint alleges that "Plaintiff Casey Cagle is an individual residing in the State of California." RJN in Support of Notice of Removal, Ex. A, ECF No. 1-4 at 3. The Notice of Removal also states that "Plaintiff alleges that he 'is an individual residing in the State of California . . . . Therefore, Plaintiff was domiciled in the State of California at the time he filed this action and is a citizen of California for the purposes of diversity jurisdiction in this matter.'" ECF No. 1 at 6.

C&S is a corporation, and thus has dual citizenship for diversity purposes. See 28 U.S.C. § 1332(c). A corporation is a citizen both of the state where it was incorporated and the state where it has its primary place of business. Id. Because C&S is incorporated in Vermont with its principal place of business in New Hampshire, it is a citizen of Vermont and New Hampshire for purposes of diversity jurisdiction.

---

[3] Defendants also assert that this Court has jurisdiction over the case pursuant to 28 U.S.C. § 1334 because the case "arises in and relates to" Plaintiff's pending Chapter 13 bankruptcy proceeding. Because the Court finds that it has diversity jurisdiction, it declines to address this second ground for jurisdiction on the merits.

1    Next is the issue of Tracy Logistics' citizenship. Defendants state that the
2 citizenship of an LLC, such as Tracy Logistics, is determined by "the state where it has
3 its principal place of business and the state under whose laws it is organized." Opp'n at
4 24. While that rule applies for determining an LLC's citizenship under the Class Action
5 Fairness Act, this case was not removed pursuant to the Class Action Fairness Act, and
6 indeed is not a class action. Accordingly, the rule for determining citizenship cited by
7 Defendants is inapplicable. For purposes of diversity jurisdiction in a case removed
8 pursuant to 28 U.S.C. § 1441, "like a partnership, an LLC is a citizen of every state of
9 which its owners/members are citizens." <u>Johnson v. Columbia Properties Anchorage,</u>
10 <u>LP</u>, 437 F.3d 894, 899 (9th Cir. 2006) (citations omitted). Thus, while Defendants state
11 in their Opposition that Tracy Logistics is owned by an LLC which is organized under the
12 laws of Delaware with its headquarters in New Hampshire, this information is insufficient
13 to establish Tracy Logistics' citizenship for the purposes of diversity jurisdiction, as the
14 Court must know the citizenship of its sole member, which is in turn determined by the
15 citizenship of its members—<u>not</u> its principal place of business and where it is organized.
16    While Defendants' Opposition does not provide the necessary information or state
17 the correct rule, Defendants' removal papers make clear that Tracy Logistics is diverse
18 from Cagle. Notice of Removal, ECF No. 1 at 7. Tracy Logistics LLC is owned by its
19 sole member, C&S Logistics of Sacramento/Tracy LLC, which in turn is wholly owned by
20 its sole member, C&S Acquisitions LLC. C&S Acquisitions LLC is wholly owned by its
21 sole member, C&S Wholesale Grocers, Inc., which is a citizen of both Vermont and New
22 Hampshire. Tracy Logistics, like C&S Wholesale Grocers, Inc., is therefore a citizen of
23 Vermont and New Hampshire.
24    Thus, because Cagle is a citizen of California, while Defendants are citizens of
25 Vermont and New Hampshire, there is complete diversity between Plaintiff and
26 Defendants.
27 ///
28 ///

6

B.     Amount in Controversy

1.     Defendants' Burden

Plaintiff contends that the Court lacks jurisdiction because Plaintiffs have each pled that the amount in controversy for their individual claims is less than $75,000 and Defendants have failed to prove with legal certainty that the jurisdictional amount is met. Specifically, the Cagle Complaint states in the Jurisdiction and Venue allegations that "the 'amount in controversy' for the named Plaintiff, including claims for compensatory damages, restitution, penalties, and pro rata share of attorneys' fees is less than [$75,000]." Compl. at 2.  No specific amount is stated in the prayer for relief.  See Compl. at 20-25.  The prayer for relief lists civil and statutory penalties; reasonable attorneys' fees and costs of the suit; actual, consequential, and incidental losses and damages; and other and further relief as the Court deems just and proper.  Defendants, on the other hand, contend that the standard for establishing the amount in controversy is a preponderance of the evidence.

Determining the standard which Defendants must meet to establish the amount in controversy requires an examination of recent Ninth Circuit case law, which sets forth numerous standards which may apply, given the particular facts of the case.  Gaus v. Miles, 980 F.2d 564 (9th Cir. 1992), provides an appropriate starting point.  There, the Ninth Circuit held that when amount in controversy is unclear, the removing defendant must put forward facts supporting its assertion that the amount in controversy is met, and show by a preponderance of the evidence that the amount in controversy is met.  Id. at 567.  The Gaus court found that it was "unclear what amount of damages the plaintiff has sought" because the plaintiff pled that his damages were "in excess of $10,000."  Id. at 566.  Then, in Lowdermilk v. U.S. National Bank Association, 479 F.3d 994 (9th Cir. 2007), the Ninth Circuit resolved the question of what the defendant must prove to remove a case to federal court when the plaintiff has pled damages less than the

jurisdictional amount, under the Class Action Fairness Act ("CAFA"). The Ninth Circuit held that, under CAFA, when a Plaintiff has pled a specific amount in damages that is less than the jurisdictional amount, Defendant must show, to a legal certainty, that the requisite amount in controversy has been satisfied. The court rested its decision on two principles: "the first is that federal courts are courts of limited jurisdiction which [it] will strictly construe." Guglielmino v. McKee Foods Corp., 506 F.3d 696, 700 (9th Cir. 2007) (citing Lowdermilk, 479 F.3d at 998). "The second principle is that the plaintiff is 'master of her complaint' and can plead to avoid federal jurisdiction." Id. (citing Lowdermilk, 479 F.3d at 998-99).

In Guglielmino, 506 F.3d 696, the Ninth Circuit decided the burden of proof for a removing defendant when the plaintiff's complaint does not specify a total amount in controversy. The court held that, where the plaintiff's complaint stated in the jurisdiction and venue allegations that the "damages to each Plaintiff are less than $75,000" but the prayer for relief made no mention of the total dollar amount in controversy, but requested, among other things, attorneys' fees, statutory and common law damages, punitive damages, a payment of back taxes and benefits, pre-judgment interest, the complaint "failed to allege a sufficiently specific total amount in controversy." Id. at 701. The Ninth Circuit found that in this circumstance, the preponderance of the evidence standard applies. Id. In its analysis, the Guglielmino court identified three different burdens of proof. First, when the complaint alleges on its face an amount in controversy sufficient to meet federal jurisdictional threshold, the requirement is presumptively satisfied unless it appears to a "legal certainty" that the plaintiff cannot actually recover that amount. Id. at 699 (citing Sanchez v. Monumental Life Ins. Co., 102 F.3d 398, 402 (9th Cir. 1996). Second, when it is unclear or ambiguous from the face of the complaint whether the requisite amount in controversy is pled, the preponderance of the evidence standard applies. Id. (citing Sanchez, 102 F.3d at 404 (applying to diversity jurisdiction); Abrego Abrego v. Dow Chemical Co., 443 F.3d 676, 683 (9th Cir. 2006) (per curium) (applying to CAFA jurisdiction)).

Finally, the court identified the standard set forth in Lowdermilk: in the CAFA context, when the complaint affirmatively alleges that the amount in controversy is less than the jurisdictional threshold, the party seeking removal must prove with legal certainty that CAFA's jurisdictional amount is met.  Id.  The Guglielmino court specifically stated that "whether Lowdermilk can be read so narrowly [as to apply only to CAFA cases] [is a] question that we leave for another day and another court."  Id. n.3.  Accordingly, the Guglielmino court saw the issue of whether the legal certainty standard applies to non-CAFA cases, where the plaintiff affirmatively pleads an amount in controversy less than the jurisdictional threshold, as an open question.

Then, in the past year, the Supreme Court decided Standard Fire Insurance Company v. Knowles, 133 S. Ct. 1345 (2013).  The Court held that when a case is brought to federal court pursuant to CAFA, a named plaintiff cannot offer a stipulation purporting to bind the proposed class to recover less than the amount in controversy to avoid federal jurisdiction.  Id.   Subsequently, the Ninth Circuit in Rodriguez v. AT&T Mobility Services LLC, 728 F.3d 975 (9th Cir. 2013), recognized that Standard Fire overruled Lowdermilk.  In Rodriquez, the plaintiff filed a putative class action in state court, and the defendant removed to federal district court pursuant to CAFA.  The plaintiff's complaint alleged that the amount in controversy did not exceed $5 million, and the plaintiff moved to remand.  The Court noted that Lowdermilk's requirement that defendants prove the amount in controversy to a legal certainty under CAFA is "clearly irreconcilable with the Supreme Court's reasoning in Standard Fire."  Rodriguez, 728 F.3d at 981.  The court noted that "Lowdermilk's legal certainty standard is a consequence of a plaintiff's ability to avoid federal jurisdiction.  That principle is not viable in actions involving absent class members."  Id.  Accordingly, Rodriguez held, "a defendant seeking removal of a putative class action must demonstrate, by a preponderance of the evidence, that the aggregate amount in controversy exceeds the jurisdictional minimum.  This standard conforms with a defendant's burden of proof when the plaintiff does not plead a specific amount in controversy."  Id.

Accordingly, there is no binding Ninth Circuit case law clearly addressing the standard that applies when a plaintiff in a non-CAFA case affirmatively pleads an amount in controversy below the $75,000 jurisdictional threshold for diversity jurisdiction. Notably, at least one court has continued to apply the Lowdermilk standard to such cases, stating that while Lowdermilk was overruled as it applies to class actions, its reasoning continues to apply to cases involving only an individual plaintiff. See Stelzer v. CarMax Auto Superstores Cal., LLC, 13-CV-1788-LAB-JMA, 2013 WL 6795615 (S.D. Cal. Dec. 20, 2013).

However, Defendants point to the Federal Court's Jurisdiction and Venue Clarification Act of 2011 ("JVCA") as setting forth the applicable standard. "On December 7, 2011, Congress enacted the [JVCA]. The law affected several Federal Rules of Civil Procedure, including but not limited to procedures pertaining to removal, remand, venue and transfer." Petersen v. Cnty. of Stanislaus, 1: 12-CV-00933-AWI, 2013 WL 1331221 (E.D. Cal. Apr. 1, 2013), F&R adopted, 1:12-CV-00933-AWI, 2013 WL 1680082 (E.D. Cal. Apr. 17, 2013) (citing Pub. L. No. 112–63; 125 Stat. 758 (2011)). The JVCA amended portions of §§ 1441 and 1446, among other code sections. Section 1446, setting forth the procedure for removal of civil actions, now states, in relevant part:

> If removal of a civil action is sought on the basis of the jurisdiction conferred by section 1332(a), the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy, except that—
>
> (A) the notice of removal may assert the amount in controversy if the initial pleading seeks—
>
>     (i) nonmonetary relief; or
>
>     (ii) a money judgment, but the State practice either does not permit demand for a specific sum or permits recovery of damages in excess of the amount demanded; and
>
> (B) removal of the action is proper on the basis of an amount in controversy asserted under subparagraph (A) if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds the amount specified in section 1332(a).

28 U.S.C. § 1446(c)(2)(A)-(B) (emphasis added).  Here, Defendants assert that § 1446(c)(2)(A)(ii) is applicable and thus the preponderance of the evidence standard applies because California law does not limit a plaintiff to the statement of damages set forth in his complaint, and thus "the State . . . permits recovery of damages in excess of the amount demanded." See Mot. at 14 (citing Damele v. Mack Trucks, Inc., 219 Cal. App. 3d 29, 41-42 (1990)).

Very few district courts within the Ninth Circuit have applied the JVCA, as incorporated into § 1446, to motions to remand dealing with the standard for establishing the amount in controversy.  In both RT Financial Inc. v. Zamora and Belair Land Co., LLC v. Durazo, the court held that the preponderance of the evidence standard, as set forth in § 1446(c)(2)(B), applied to a complaint which expressly stated that the amount in controversy did not exceed $10,000.  RT Financial Inc., No. 1:12-cv-01581-AW-SKO, 2012 WL 4468763, *2 (E.D. Cal. Sept. 27, 2012); Belair Land Co., No. 1:12-cv-00158-AWI-SKO, 2012 WL 591925, *3 (E.D. Cal. Feb. 22, 2012).  In Sherman v. Nationwide Mut. Ins. Co, the court considered a motion to remand a complaint that alleged claims under Montana state law and sought an unspecified amount of damages and attorneys' fees.  No. CV 12-152-M-DLC-JCL, 2013 WL 550265, *1 (D. Mont. Jan. 15, 2013). Because Montana law did not permit the amount of damages to be stated in the claim for relief, the Court found that the complaint fell within the ambit of § 1446(c)(2)(A)(ii), and thus applied the preponderance of the evidence standard of § 1446. Id. In Kahlo v. Bank of America, the court noted that the Gaus v. Miles preponderance of the evidence standard for complaints which do not specify an amount in controversy has been incorporated into § 1446 pursuant to the JVCA.  No. C12-0083RSM, 2012 WL 1067237, *2 (W.D. Wash. Mar. 28, 2012).

In light of the lack of binding precedent from the Ninth Circuit as to the applicable standard, and the clear and authoritative language of § 1446(c)(2), the Court finds that the standard for determining whether Defendants meet their burden of establishing the amount in controversy is the preponderance of the evidence.

11

Under this standard, "the removing party's burden is 'not daunting,' and defendants are not obligated to 'research, state, and prove the plaintiff's claims for damages.'" Behrazfar v. Unisys Corp., 687 F. Supp. 2d 999, 1004 (C.D. Cal. 2009) (quoting Korn v. Polo Ralph Lauren Corp., 536 F. Supp. 2d 1199, 1204-05 (E.D. Cal. 2008)). When a "[d]efendant's calculations [are] relatively conservative, made in good faith, and based on evidence wherever possible," the court may find that the "[d]efendant has established by a preponderance of the evidence that the amount in controversy" is met. Id. (citing Neville v. Value City Dep't Stores, LLC., No. 07-cv-53-DRH, 2008 WL 2796661, *5-6 (S.D. Ill. July 18, 2008); Eisler v. Med. Shoppe Int'l, Inc., NO. 4:05CV2272 JCH, 2006 WL 415953, *2 (E.D. Mo. 2006)).

### 2. Amount in Controversy Calculations

Plaintiff challenges Defendants' amount in controversy calculations regarding Plaintiff's overtime claim, Plaintiff's untimely final wages claim, and attorneys' fees.

<u>Overtime Claim</u>

Plaintiff's first cause of action alleges that Plaintiff "worked in excess of eight (8) hours in a day, in excess of twelve (12) hours in a day, and/or in excess of forty (40) hours in a week," in violation of California Labor Code sections 510 and 1198. ECF No. 1-4 at 10. Defendants' notice of removal asserts that the amount in controversy for this claim is between $36,968.88 and $49,514.88. Defendants reached the lower amount by calculating as follows: (17 workweeks x 16 hours OT per week x $27.88 per hour x 1.5) + (17 workweeks x 12 hours DT per week x $27.88 per hour x 2) + (12 workweeks x 15 hours OT per week x 27.88 x 1.5) + (8 workweeks x 20 hours of OT per week x $27.88 per hour x 1.5). Defendants reached the higher amount by calculating: (37 workweeks x 16 hours OT per week x $27.88 per hour x 1.5) + (37 workweeks x 12 hours DT per week x $27.88 per hour x 2).

///

Plaintiff challenges this calculation, asserting that "Defendants' calculations for overtime hours worked are fundamentally flawed because they rely on assumptions and speculation rather than summary-judgment type evidence." However, as set forth above, under the preponderance of the evidence standard, Defendants need not provide summary judgment-type evidence. Plaintiff cites to Abrego Abrego v. Dow Chemical Co., which states:

> the district court may consider whether it is facially apparent from the complaint that the jurisdictional amount is in controversy. If not, the court may consider facts in the removal petition, and may require the parties to submit summary-judgment-type evidence relevant to the amount in controversy at the time of removal.

443 F.3d 676, 690 (9th Cir. 2006) (quoting Singer v. State Farm Mut. Auto. Ins. Co., 116 F.3d 373, 377 (9th Cir. 1997)).

More specifically, Plaintiff asserts that Defendants provide no evidence for the proposition that Plaintiff's salary was $27.88 an hour, or that Plaintiff worked 37 workweeks. Additionally, Plaintiff points out that Defendants assume that Plaintiff worked each pay period of his employment; while Plaintiff contends it would be "highly unlikely" that he never took vacation time, medical leave, or other time off. Plaintiff therefore argues that rather than providing competent evidence, Defendants merely assume that Plaintiff worked each pay period between September 2010 until May 2011. Plaintiff also faults Defendants for reliance on Dennis Bicek's testimony regarding his own hours and days worked.

First, the Court must address Plaintiff's objections to the Clark declaration. Plaintiff contends that the Clark declaration, which states that Plaintiff's hourly was $27.88 per hour, "lacks foundation, does not adhere to the best evidence rule, and is not summary judgment-type evidence."

///

///

///

While the Court agrees that the Clark declaration is lacking specificity which would be helpful, Mr. Clark establishes a sufficient foundation for this declaration by declaring that his knowledge of Plaintiff's salary and period of work is based on his business responsibilities and his personal review of employment and personnel records, which he has access to as part of his duties as a Regional Director of Field Human Resources for C&S. It is not necessary at this stage of the proceedings for Defendants to provide the business records themselves. "Where, as here, a defendant must prove the amount in controversy by a preponderance of the evidence, a declaration or affidavit may satisfy the burden." Ray v. Wells Fargo Bank, N.A., CV 11-01477 AHM JCX, 2011 WL 1790123 (C.D. Cal. May 9, 2011) (citing Lewis v. Verizon, 627 F.3d 395, 397 (9th Cir. 2010) ("To satisfy its burden in this case, the removing defendant . . . supplied an affidavit to show that the potential damages could exceed the jurisdictional amount. We conclude that this showing satisfies Verizon's burden.").

Next, the Court turns to calculating the amount in controversy for this claim. Plaintiff's declaration states that, as of April 20, 2011, his schedule is Sunday through Thursday, from 2:00 PM to 2:00 AM—approximately 12 hours per day. Ex. 1 to Notice of Removal, ECF No. 1 at 19. For 2 weeks in March 2011, Plaintiff's schedule was 4:00 PM to 3:00 AM—approximately 11 hours per day. From January 2011 through the beginning of March 2011, Plaintiff's schedule was from 6:00 PM to 5:00 AM—approximately 11 hours per day. Plaintiff's schedule prior to January 2011 varied every 3 to 4 weeks. This evidence is appropriate for the Court to consider in determining the amount in controversy be a preponderance of the evidence and suggests that it is more likely than not that Plaintiff worked approximately 11-12 hours per day, 5 days per week.

The Court may also consider the testimony provided by Dennis Bicek, as Mr. Bicek purports to be a representative of a class of which Plaintiff is a member. While this evidence is not absolute proof of the hours Plaintiff worked during the relevant time periods, it is evidence supporting Defendants' calculations and demonstrating their reasonableness.

1  Again, the Court need only find that it is "more likely than not" that the jurisdictional
2  threshold is met, Sanchez, 102 F.3d at 404, and this "burden is not daunting, as courts
3  recognize that under this standard, a removing defendant is not obligated to research,
4  state, and prove the plaintiffs' claims for damages." Korn, 536 F. Supp. 2d at 1204-05.
5  Mr. Bicek testified that in 2010, he worked approximately 15-18 hours per day, 4 days a
6  week. Bicek Dep., ECF No. 1-2 at 6. Mr. Bicek also testified that during that time, other
7  supervisors on his shift, and on different shifts, worked the same number of hours that
8  he did. Id. at 6-7. Mr. Bicek further testified that in 2011, he worked approximately 15-
9  18 hour days, 4 days per week, and that all other supervisors worked the same number
10 of hours that he did. Id. at 6.

11      Thus, Defendant has shown that in 2010, it is more likely than not that Plaintiff
12 worked at least 15 hours per day, 4 days per week. For 2010, Plaintiff would therefore
13 be entitled to 16 hours of overtime per week, paid at time and a half, and 12 hours of
14 double time per week for approximately 17 weeks (September 10, 2010 through
15 December 31, 2010). At $27.88 per hour, this amounts to $11,375.04 in overtime for
16 2010 and $11,375.04 in double time for that same period, totaling $22,750.08. For
17 2011, up between January and March 2011, Plaintiff worked 12 weeks with
18 approximately 11 hours per day, 5 days per week—amounting to 15 hours of overtime
19 per week. Then, in April, Plaintiff's schedule was 12 hours per day, 5 days per week—
20 amounting to 20 hours of overtime per week for approximately 3 weeks. At time and a
21 half, this comes to $10,036.80 in controversy between January 2011 and April 20, 2011.
22 Combined with the amount in controversy for 2010, this comes to $32,786.88.

23     Finally, although Plaintiff contests Defendants' attempts to apply these amounts
24 to the remaining April and May dates in 2011, the Court may again look to Mr. Bicek's
25 testimony, which states that in 2011, he and all other supervisors worked between 15-18
26 hours per day. Given that Plaintiff worked between 11 and 12 hours per day for the
27 beginning of 2011, the Court will conservatively estimate that Plaintiff worked 12 hour
28 days for the remaining week of April and for May 2011, or approximately 5 weeks.

At 12 hours per day, 5 days per week, that amounts to approximately 20 hours of overtime per week for 5 weeks. At $27.88 per hour, that amounts to $4,182 in controversy for that period.

The Court therefore finds that Defendants have shown, by a preponderance of the evidence, that the amount in controversy for this claim is $36,968.88 as to alleged overtime alone.

Untimely Final Wages Claim

Defendants assert that the amount in controversy for this claim is $6,691.20. ECF No. 1 at 12. Plaintiff takes issue with that calculation, claiming that

> instead of providing evidence of when Plaintiff was paid final wages, Defendants assume Plaintiff was paid final wages 30 or more days after his employment ended. This assumption would not be accepted at summary judgment and it should not be accepted here for the purposes of determining the amount in controversy.

ECF No. 14 at 12. Plaintiff's complaint asserts that "Defendants intentionally and willfully failed to pay Plaintiff who is no longer employed by Defendants his wages, earned and unpaid, within seventy-two (72) hours of his leaving Defendants' employ." ECF No. 1-4 at 14. Under California Labor Code section 203, if an employer willfully fails to pay wages owed, then the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action is commenced, but the wages shall not continue for more than 30 days. Nowhere does Plaintiff allege that Defendants failed to pay these wages for 30 days. Defendants respond that because Plaintiff alleges he was not paid <u>any</u> overtime wages, those wages clearly were not paid within 30 days of Plaintiff leaving Defendants' employment.

The Court agrees with Defendants. In construing the allegations in the complaint as true, the Court must accept that because Plaintiff alleges that overtime was never paid, Defendants failed to pay Plaintiff wages owed for 30 days after Plaintiff left Defendants' employ.

///

     Accordingly, the Court finds that Defendants have shown by a preponderance of the evidence that the amount in controversy for this claim is $6,691.20.

     <u>Attorneys' Fees</u>

     Finally, attorney's fees may also be considered in determining the amount in controversy if such fees are recoverable by plaintiff, either by statute or by contract. <u>Galt G/S v. JSS Scandinavia</u>, 142 F.3d 1150, 1156 (9th Cir. 1998).  This is a wage and hour case brought under various California Labor Code statutes which provide for the award of attorneys' fees to a prevailing employee.  <u>See</u> Cal. Lab. Code § 2699(g)(1).  Plaintiff seeks these fees in his complaint, and thus attorneys' fees may be included when determining amount in controversy.  However, "only reasonable fees will be included in the calculation."  <u>Lippold v. Godiva Chocolatier, Inc.</u>, C 10-00421 SI, 2010 WL 1526441, *3 (N.D. Cal. Apr. 15, 2010) (citing 14A C. Wright, A. Miller & E. Cooper, <u>Fed. Prac. & Proc.</u> § 3712, at 176-77)).  "[W]hat is 'reasonable' will vary depending on the facts and circumstances of each particular case."  <u>Id.</u>  "It appears to be an open question in the Ninth Circuit whether an estimate of attorneys' fees incurred after the removal date should be included in the amount in controversy."  <u>Id.</u> (citing <u>Burk v. Medical Savings Ins. Co.</u>, 348 F. Supp. 2d 1063, 1069 (D. Ariz. 2004) (discussing split of authority among district courts within the Ninth Circuit)).  This Court has consistently held that such an estimate may be included in calculating the amount in controversy, and holds so here.  <u>See, e.g.</u>, <u>Haase v. Aerodynamics Inc.</u>, No. 2:09-cv-01751-MCE-GGH, 2009 WL 3368519 (E.D. Cal. Oct. 19, 2009).

     Here, Defendants assert that reasonable amount of attorneys' fees for this case is, at a minimum, $30,000.  Defendants reach this conclusion by stating that associates and partners as Lawyers for Justice, P.C., the firm representing Plaintiff, bill at between $300 and $600 per hour.  Mr. Aiwazian bills at $600 per hour.  The R. Rex Parris Law Firm has used a blended rate of $500 per hour.  Defendants estimate that, at a minimum rate of $300 per hour, with a reasonable expectation of billing 100 hours, attorneys' fees would reach $30,000.

As the Northern District noted in Lippold, "attorneys handling wage-and-hour cases typically spend far more than 100 hours on the case." 2010 WL 1526441 at *4. Defendants also cite to evidence of attorneys' fees awarded in class action wage and hour cases, and multiple plaintiff wage and hour cases. The Court finds that these cases are not helpful in determining the amount of hours to be expended in this litigation, as this is a single-plaintiff action, and, as Plaintiff points out, there are several other similar actions pending before this Court, which will likely reduce the number of hours to be expended on any one of those individual case.

Nonetheless, the Court finds that Defendants have made a reasonable and good faith estimate of the expected fees, sufficient for the Court to include $30,000 for attorneys' fees in calculating the amount in controversy.

Uncontested Claims

Plaintiff does not contest Defendants' asserted amount in controversy as to the following claims: (1) meal period claim, for which Defendants allege there is approximately $557.60 in controversy; (2) rest period claim, for which Defendants assert there is $697 in controversy; (3) non-compliant wage statement claim, for which Defendants assert there is $3,650 in controversy; (4) failure to keep requisite payroll records claim, for which Defendants assert that the amount in controversy is $500. Thus, the total uncontested amount in controversy is $5,404.60.

Totals

The Court therefore finds that, by a preponderance of the evidence, the amount in controversy is $79,064.68 ($36,968.88 + $6,691.20 + $30,000 + $5,404.60). This finding is bolstered by the fact that the Tompkins action settled for $75,001.00, suggesting that this action too is worth at least the $75,000 jurisdictional threshold.

Accordingly, Plaintiffs' Motion is DENIED.

///

///

///

**CONCLUSION**

For the reasons set forth above, Plaintiff's Motion to Remand, ECF No. 14, is DENIED.

IT IS SO ORDERED.

Dated: February 18, 2014

_____
MORRISON C. ENGLAND, JR, CHIEF JUDGE
UNITED STATES DISTRICT COURT